**Maxine Kilkenny LEES, Plaintiff,**

v.

**The CASE–HOYT CORPORATION, Defendant.**

**Civ. No. 90–0163L.**

United States District Court, W.D. New York.

Dec. 23, 1991.

Irene K. Dymkar, Dymkar & Brandt, Rochester, N.Y., for plaintiff.

Ted H. Williams, Scolaro, Shulman, Cohen, Lawler & Burstein, Syracuse, N.Y., for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

This matter is before the court on defendant Case–Hoyt Corporation's motion for summary judgment. Plaintiff Maxine Lees filed this action against her former employer, Case–Hoyt, alleging race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964. For the reasons stated below, defendant's motion for summary judgment on the claim of wage discrimination is denied, and defendant's motion for summary judgment on the claim of retaliatory harassment is granted.

## I. BACKGROUND

Plaintiff Maxine Lees, a black female, was hired by the defendant Case–Hoyt Corporation as a customer service representative ("CSR") on May 12, 1986, at a yearly salary of $17,000. During most of her employment, the plaintiff was the only black CSR working for the defendant. Soon after she was hired, two serious problems arose. First, the plaintiff began making numerous complaints to her supervisors that her salary was low in relation to her experience and compared to the salaries paid to the other CSRs, all of whom happened to be white. Although the plaintiff did receive several raises over the course of her employment, she continually complained that her salary was too low. Second, in early 1987 the plaintiff began arriving late to work, and her supervisors reprimanded her for her tardiness on nu-

merous occasions. Plaintiff attempted to negotiate a solution, explaining that she had recently become a single parent and that her two children created many responsibilities for her in the mornings. However, no solution was worked out and over the course of her employment the problem intensified.

On January 12, 1988, the plaintiff filed a complaint with the New York State Division of Human Rights (the "Division"). Plaintiff alleged wage discrimination on the basis of race and color and that the defendant was retaliating against her for complaining about her low salary by harassing her for coming in late. The Division made a determination of "no probable cause" on March 28, 1989. In the meanwhile, the plaintiff continued to be reprimanded for arriving late. Finally, on April 11, 1988, the defendant suspended plaintiff for two days. When she returned on April 14, 1988 the plaintiff resigned.

After the Division rendered its decision, the Equal Employment Opportunity Commission ("EEOC") conducted its own investigation. The EEOC issued a decision that the evidence did not establish violations of Title VII, on November 13, 1989. Plaintiff subsequently filed this complaint on February 12, 1990, alleging wage discrimination on the basis of race and sex and retaliatory harassment.

The defendant is moving for summary judgment on two grounds.[1] First, that plaintiff's claim of wage discrimination on the basis of race is untimely or in the alternative that it does not state a claim upon which relief can be granted and that plaintiff has failed to establish a prima facie case of wage discrimination. Second, that the plaintiff has failed to establish a prima facie case of retaliatory harassment.

## II. ANALYSIS

### A. Statute of Limitations

■ In a deferral state, such as New York, a complainant must file a charge

---

1. Subsequent to the filing of defendant's motion for summary judgment, plaintiff withdrew her claim of sex discrimination.

with the EEOC within 300 days following the alleged discriminatory event. 42 U.S.C. §§ 2000e–5(e). However, because a deferral state is one that has its own agency through which a complainant can seek relief from discrimination, Title VII also "provides that no charge may be filed with the EEOC until 60 days have elapsed from initial filing of the charge with an authorized state or local agency...."[2] *E.E.O.C. v. Commercial Office Products Co.,* 486 U.S. 107, 110–11, 108 S.Ct. 1666, 1668–69, 100 L.Ed.2d 96 (1988). Consequently, in order to fall within the 300–day limitation period "a complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event ..." *Commercial Office Products Co.,* 486 U.S. at 111, 108 S.Ct. at 1669 (citing *Mohasco Corp. v. Silver,* 447 U.S. 807, 814, n. 16, 100 S.Ct. 2486, 2491, n. 16, 65 L.Ed.2d 532 (1980)).[3] In this case plaintiff filed a complaint with the Division on January 12, 1988, and more than sixty days elapsed before the Division completed its investigation and rendered a decision. Thus, for plaintiff's complaint to be timely the alleged discriminatory event must have occurred during the 240 days before January 12, 1988.

■ The defendant, relying on *Labeach v. Nestle Company, Inc.,* 658 F.Supp. 676 (S.D.N.Y.1987), contends that for a claim of wage discrimination the relevant discriminatory event is the setting of the salary and consequently, the limitations period started to run on May 1, 1986, the day plaintiff was told her starting salary. Under this interpretation plaintiff's filing on January 12, 1988 would be untimely. However, defendant's contention is without merit. Although the general rule is that the Title VII limitations period starts to run "on the date the plaintiff receives notice of the allegedly discriminatory act, [and] not the date the decision actually takes effect," *Hale v. N.Y. State Dep't of Mental Health,* 621 F.Supp. 941, 942 (S.D.N.Y.1985) (citations omitted), when an employee is adversely affected "pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2nd Cir.1985), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *see also Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982). "In such circumstances if the charge has been filed no later than 300 after the last act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well." *Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 275 (2nd Cir. 1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). Plaintiff contends that the defendant's practice of paying her less than her white counterparts constitutes a continuing violation.

---

**2.** 42 U.S.C. § 2000e–5(c) provides, in part:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision

of a State, which has a State or local law prohibiting the unlawful employment practice alleged and

establishing

or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) [ (b) ] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated ...

**3.** The EEOC's regulations set out when a charge will be deemed filed with the EEOC in a deferral state. If a charge is initially filed with the EEOC and the charge is one over which the state agency has waived its right to exclusive processing, then the charge is deemed filed when received by the EEOC. If the charge is not one over which the state agency has waived its right to exclusive processing, then the charge is deemed filed 60 days after deferral or upon termination of the investigation by the state agency whichever is earliest. 29 C.F.R. § 1601.-13(a)(4)(ii) (1991). If a charge is initially filed with the state agency, the charge is deemed filed with the EEOC 60 days after the charge was received by the state agency or upon termination or waiver of exclusive processing by the state agency whichever is earliest. 29 C.F.R. § 1601.13(b)(1).

■ It has consistently been held that a claim of wage discrimination exists not only at the time of setting the salary but also each time the employee receives unequal pay. *Satz v. ITT Financial Corp.,* 619 F.2d 738 (8th Cir.1980) (practice of paying discriminatory unequal pay occurs not only when an employer sets pay levels, but as long as the discriminatory differential continues); *Bartelt v. Berlitz School of Languages of America,* 698 F.2d 1003 (9th Cir.1983), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983) (policy of paying lower wages to female employees on each payday constitutes a continuing violation); *Jenkins v. Home Insurance Co.,* 635 F.2d 310 (4th Cir.1980) (continuing violation ended only when plaintiff stopped working); *Hall v. Ledex, Inc.,* 669 F.2d 397 (6th Cir.1982) (the discrimination was continuing in nature with each check received); *Schulte v. State of New York,* 533 F.Supp. 31 (E.D.N.Y.1981) (discriminatory pay practices under the EPA are continuing violations); *Clay v. Quartet Manufacturing Co.,* 644 F.Supp. 56 (N.D.Ill.1986) (equal pay claim may continue as long as the discriminatory pay scale is in force); *but cf., Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408 (S.D.N.Y.1989) (plaintiff not entitled to recover disparate salary earned prior to limitation period).

■ This line of authority is compelling and I believe that it controls here. A wage scale, whether set out in writing or not, that decreases the value of the work of an employee because of her race or gender is precisely the type of policy and practice that the continuing violation theory encompasses. While each payment of a discriminatorily low paycheck is a separate and distinct violation of Title VII, all such payments are connected by the employer's continuing policy and practice of paying an employee a lower wage because of their race or gender. Defendant's argument that any salary discrepancy that existed during the limitations period can be attributed only to the initial salary setting decision is unpersuasive. Defendant's contention and its reliance on *Labeach* is premised on the Supreme Court's holding in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). However, unlike the violation alleged in *Evans,* wage discrimination is a violation that persists into the limitations period and is not merely some effect of a discriminatory act that occurred some time ago. As long as plaintiff can support an inference of wage discrimination during the limitation period her complaint is timely. Consequently, the defendant's reliance on *Labeach* is misplaced. Unlike plaintiff in this case, *see infra,* the plaintiff in *Labeach* failed to produce any facts that suggested that he suffered wage discrimination during the limitations period. *Labeach,* 658 F.Supp. at 688.

Plaintiff filed a complaint with the Division in January 1988, and continued to receive paychecks through April 1988. Although not stated explicitly it can be inferred that plaintiff was being paid during the 240 day period before she filed a complaint with the Division. Plaintiff has produced evidence to support an inference of wage discrimination during the limitations period. *See, infra,* § II.C. Consequently, the plaintiff's claim of wage discrimination was timely filed with the Division.

B. Standard of Review of Title VII Claim on Summary Judgment

■ It is axiomatic that summary judgment is ordinarily inappropriate in cases where intent and state of mind are at issue. *Montana v. First Federal Savings & Loan of Rochester,* 869 F.2d 100, 103 (2nd Cir. 1989). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2nd Cir.1988). Summary judgment should be granted when "viewing the record in the light most favorable to the nonmoving party ... the evidence offered demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.,* at 1114 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) and *Anderson v. Liber-*

ty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986)).

To defeat a summary judgment motion in a Title VII case, the plaintiff may rely on the three step analytical framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to establish a reasonable inference of discriminatory intent. *See Montana*, 869 F.2d at 103; *Meiri v. Dacon*, 759 F.2d 989, 994–95 (2nd Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). The three steps are as follows,

> [f]irst the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection ..." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting *McDonnell Douglas*, 411 U.S. at 802, 804, 93 S.Ct. at 1824, 1825). On summary judgment the plaintiff is not required to meet the burden of proving its case by a preponderance of the evidence, she need only establish a prima facie case by producing evidence sufficient to support a reasonable inference of discrimination.

*Foster v. Arcata Assoc., Inc.*, 772 F.2d 1453, 1459 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). A defendant can still prevail on summary judgment if it can articulate a legitimate business reason for the pay differential *and* if plaintiff is unable to produce evidence that defendant's proffered explanation is pretextual.

### C. Wage Discrimination

#### 1. *Prima Facie Case*

To establish a prima facie case of wage discrimination a plaintiff must show that "(1) she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir.1984), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986); *Payne v. General Motors Corp.*, 731 F.Supp. 1465, 1471 (D.Kan.1990). Plaintiff has produced sufficient evidence to establish a prima facie case of wage discrimination. First, plaintiff is a black female, a group recognized as a protected class. Second, the evidence shows that throughout her employment, the plaintiff was paid less than white CSRs with similar training for work requiring substantially the same responsibilities.

There were three other CSRs who, like plaintiff, received Bachelor of Science degrees in printing from the Rochester Institute of Technology ("RIT"). They were Diane Nabel ("Nabel"), Betsy Small ("Small") and Ariel Brown ("Brown"). A comparison of their salaries is set out below.

| | Plaintiff | Nabel | Small | Brown |
|---|---|---|---|---|
| 1/1/87 | $19,000 | $20,000 | $20,000 | $20,000 |
| 4/15/87 | 19,000 | 21,000 | 20,000 | 20,000 |
| 1/1/88 | 19,000 | 23,000 | 20,000 | 20,000 |
| 1/15/88 | 21,300 | 23,000 | 23,000 | 22,300 |
| 1/31/88 | 22,000 | 23,000 | 23,000 | 23,000 |

There were also three customer services representatives who, unlike plaintiff, had no degree. They were Eric Ohlschlager ("Ohlschlager"), Elaine Heveron ("Heveron") and Philip Jenkinson ("Jenkinson"). A comparison of their salaries is set forth below.

| | Plaintiff | Ohlschlager | Heveron | Jenkinson |
|---------|-----------|-------------|----------|-----------|
| 1/1/87 | $19,000 | $20,000 | $19,000 | $19,000 |
| 1/15/88 | 21,300 | 22,800 | 21,300 | 21,300 |
| 1/31/88 | 22,000 | 23,000 | 22,000 | 22,000 |

The two CSRs with salaries equal to plaintiff, Heveron and Jenkinson, did not have college degrees and both were white. The three employees, Nabel, Small and Brown, who like plaintiff had B.S. degrees from RIT, were all paid more than the plaintiff and all three were white. All other employees, whose records were submitted, had salaries higher than plaintiff. Defendant does not challenge plaintiff's allegations concerning the educational background of the above employees.

The salary disparity is not explained by any differences in the type of work performed by plaintiff and Nabel, Small or Brown. In fact, the evidence submitted suggests that plaintiff had greater responsibilities and performed more work than the other CSRs. Plaintiff's affidavit states that, "[w]hen I was hired, there were three (3) customer service representatives working in the Point of Purchase Group of the Sheetfed Operations, Krista Fennessy, Tom Armstrong, and myself. Three (3) weeks after I was hired, Krista Fennessy left the job. In August, 1986, Tom Armstrong was fired. Thereafter, I did *the work of three (3) employees*, without any additional compensation, until the time I left in April of 1988." (Plaintiff's Affidavit p. 4) (emphasis in original). The plaintiff was also only one of a few employees with computer experience. Consequently, she was required to train other employees on the computer, including Small and Brown, the two CSRs who were paid more than plaintiff. Plaintiff also states that she developed training manuals for customer service employees.

The defendant has not challenged any of these assertions. Instead their primary contention has been that the plaintiff's starting salary was higher than at least one white CSR, Kelly Smith. However, the defendant has failed to explain whether Smith had a college degree or whether her responsibilities were comparable to plaintiff's duties. According to plaintiff, Smith had no customer service experience nor did she have a college degree. Moreover, despite starting at a lower salary than plaintiff, by April 15, 1987 Smith was earning more than plaintiff. At that time Smith's yearly salary was $20,000. Smith stopped working for the defendant on July 24, 1987. (Catlin Aff., Ex. C).

Drawing "all factual inferences in favor of the party against whom summary judgment is sought," *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2nd Cir. 1989), the evidence presented is sufficient to support a prima facie case of wage discrimination. Plaintiff has demonstrated that there were white employees with similar qualifications and experience who were paid more for work requiring substantially the same responsibility.

2. *Legitimate Business Reasons*

A defendant can rebut plaintiff's prima facie case by producing evidence to show a legitimate nondiscriminatory business reason for the disparity in salary. *Dister*, 859 F.2d at 1115. Defendant is not

required to prove this point but must provide "clear and specific" explanations to dispel the inference of discrimination raised by plaintiff's prima facie case. *Id.* at 1115 (quoting *Meiri,* 759 F.2d at 997).

 The defendant relies on the broad assertion that "[s]alaries are determined by a combination of factors, including the background and skills of the person, market conditions, the company's financial position at the time of the offer, and the relative value of the job internally." (Catlin Aff., p. 2). Again defendant focuses on the initial starting salary paid to the plaintiff. However, even if this were the only relevant inquiry, defendant's proffered explanation is wholly inadequate to dispel the inference of discrimination. Such vague and broad explanations as offered by defendant provide no clear explanation for why the plaintiff's salary was set as low as it was nor why it continued to be lower than others with similar background and skills. "Without needing to condemn unwritten, informal, vague, and subjective salary determination procedures as highly susceptible to the abuses of racial discrimination ... it is enough to note that, if the differences in labor value of a white printer and a black printer stems from the market place putting a different value on race, Title VII is violated." *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071, 1074 (5th Cir.1981).

Defendant has offered nothing to show that plaintiff's salary was tied to an unsatisfactory job performance or some other identifiable factor. Without such evidence produced plaintiff's prima facie case of wage discrimination stands unrebutted. Consequently, defendant's motion for summary judgment with respect to the claim of wage discrimination is denied.

**D. Retaliation**

Plaintiff's second claim is that the defendant retaliated against her after she complained that her salary was lower than salaries paid to her white counterparts.[4] Defendant has treated this claim as one alleging discrimination in the application of disciplinary measures rather than retaliation. The likely reason for the confusion is that the complaint does not specifically allege retaliation. Instead, it alleges that the defendant held plaintiff to a strict time schedule while making accommodations for a white employee, and that the defendant's absence/tardiness report reflected the close watch plaintiff's supervisor's kept on her as opposed to the relaxed watch kept on the white employees.

 Although the claim of retaliation does not appear on the face of the complaint, as such, the complaints plaintiff filed in this action and with the Division allege facts sufficient to treat the present claim as one alleging retaliation.[5] Plaintiff filed her complaint *pro se,* such a complaint should be liberally construed to give full effect to the potential claims contained therein.[6] A *pro se* plaintiff should not suffer prejudice for not specifying the exact legal argument under which she intended to proceed when sufficient facts existed to place the defendant on notice. Moreover, the analysis required in a claim of discriminatory disciplinary actions is part of the analysis required in a retaliation claim. Consequently, I will treat plaintiff's claim as one alleging retaliation.

**1. *Prima Facie Case of Retaliation***

 Absent direct proof, "[t]he order and allocation of burdens of proof in

---

**4.** 42 U.S.C. 2000e–3(a) provides in relevant part that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**5.** In the complaint filed with the Division, plaintiff alleged that, "[a]pproximately one week after I complained about the disparity in pay, Mr. Pipitone began to single me out for disparate treatment." (Catlin Aff., Ex. K).

**6.** Plaintiff is currently being represented by counsel.

retaliation cases follow that of general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green* ...'' *Sumner v. U.S. Postal Service,* 899 F.2d 203, 208 (2nd Cir.1990) (citations omitted). To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) protected participation or opposition under Title VII known by the alleged retaliator, (2) an employment action disadvantaging the person engaged in the protected activity and (3) a causal connection between the protected activity and the disadvantageous employment action. *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2nd Cir.1987) (emphasis in original) (citations omitted), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). "Proof of a causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, ... or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, ... or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *Id.*

Plaintiff alleges that two actions on her part precipitated the retaliation. First, plaintiff contends that "[i]n October of 1986, when I received my six (6) month review and starting [sic] complaining about the fact that I was being discriminated against, the surveillance and the retaliation began." (Pl.'s Aff., p. 5). Second, the plaintiff contends that "[p]ressure increased tremendously once I brought a complaint with the New York State Division of Human Rights in January of 1988, forcing me for my own mental health to leave this employment." (Pl.'s Aff., p. 7). Plaintiff claims that the defendant retaliated by disciplining her for arriving to work five to thirty minutes late, ultimately forcing her to resign in April 1988.

■ Plaintiff has failed to establish a prima facie case of retaliation. Despite being able to show that she had engaged in protected activity and that she suffered some adverse employment action, plaintiff is unable to establish a causal connection between the protected activity and the adverse actions. When plaintiff complained to her supervisor that she was paid less than white CSRs and when she filed a complaint with the Division she was engaging in activities protected under Title VII. *See Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1569 (2nd Cir.1989) (ADEA claim). To establish that her activity was protected activity plaintiff need only show that she "was acting under a good faith, reasonable belief that a [Title VII] violation existed." *Sumner,* 899 F.2d at 209. At the time of her complaints plaintiff knew that Diane Nabel, despite having similar work experiences and being hired at about the same time as the plaintiff, was paid a higher salary. At the time she filed her complaint with the Division, plaintiff was aware that a black former CSR, Bridgette Burch, was also paid less than white CSRs. Such information is adequate to support a reasonable belief that she was being discriminated against.

The evidence supports a reasonable inference that plaintiff has suffered an adverse employment action. Plaintiff alleges three adverse employment actions, the reprimands for arriving late, the failure to negotiate an alternative time schedule and the two day suspension. While in the majority of retaliation claims the adverse employment action suffered by a plaintiff is either termination or demotion, these are not the only employment actions that could be retaliatory. The inability to change her work schedule, and the continual reprimands she received, set the stage for plaintiff's ultimate resignation. On the evidence submitted, it would be inappropriate, on summary judgment, to find that the plaintiff did not as a matter of law suffer an adverse employment action.

■ However, plaintiff has failed to establish a causal connection between the adverse employment actions and her complaints of wage discrimination. Plaintiff has produced no evidence of racial animus and must therefore rely on indirect proof of a causal connection. Plaintiff has failed to establish that the protected activity was closely followed by the discriminatory

treatment. Plaintiff contends that she complained of wage discrimination in October 1986, yet her supervisors did not start complaining about her tardiness for seven months. It was not until May 1987 that the plaintiff was reprimanded for arriving late, and it was not until December 1987 that plaintiff received her first written warning. Similarly, plaintiff was suspended in April 1988, four months after filing her complaint with the Division, eighteen months after first complaining of discrimination and after being told on numerous occasions that if she continued to be tardy she would be disciplined. All that the proffered evidence and allegations demonstrate is that plaintiff was reprimanded for arriving to work late, not that she was disciplined for complaining of wage discrimination.

■■■ Plaintiff also fails to show disparate treatment of fellow employees who engaged in similar conduct. To establish disparate treatment, the plaintiff must show membership in a protected class and that a similarly situated nonprotected person was treated differently. *See Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir.1985), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Plaintiff can point to no other employee who was tardy but not punished and the defendant has offered unrebutted evidence that no one with a tardiness record like plaintiff's ever went unpunished.[7] Plaintiff does allege in her complaint that "office worker, Bonnie La Due, a white female, was able to make an arrangement with her supervisor, Cheryl Haak, a white female, to come in late in the mornings and work later in the afternoon." (Complaint, p. 12). However, plaintiff does not explain whether La Due was similarly situated with her nor did she even raise this issue in her papers in opposition to the summary judgment motion. The mere allegation that one employee worked out a

compromise with her supervisor fails to create an issue of material fact. Plaintiff has failed to establish any causal connection between her protected activity and the adverse employment actions. Consequently, she has not established a prima facie case of retaliation.

### 2. *Legitimate Business Justification*

■■■ Even if the plaintiff could establish a prima facie case of retaliation she is unable to rebut, as pretextual, the business justification offered by defendant. Defendant has established that there was a written policy on tardiness that stated, "continued absenteeism and tardiness may result in disciplinary action and possible discharge." (Catlin Aff., Ex. D), and it is undisputed that the plaintiff began arriving late to work starting in February 1987.[8] The mere fact that plaintiff complained of discrimination does not insulate her from following established company rules. *See Ardrey v. United Parcel Service*, 615 F.Supp. 1250, 1269 (D.C.N.C.1985), *aff'd*, 798 F.2d 679 (4th Cir.1986).

■■■ Because of the plaintiff's frequent tardiness, defendant began issuing verbal and written reprimands. Yet contrary to plaintiff's assertions that the reprimands were motivated by a desire to retaliate against her, the apparent intent of these reprimands was to eliminate the need to have to resort to more serious measures, such as a suspension. Plaintiff herself states that on July 24, 1987 her supervisor Sal Pipitone, "pulled me aside after our production meeting, and told me that I had been coming in early and he just wanted to give me some positive reinforcement." (Complaint, p. 10). Moreover, defendant did not take any serious action against plaintiff until April 1988, over a year after plaintiff began coming in late and over

---

**7.** Plaintiff attempts to discredit the defendant's evidence by arguing that the examples of employees who were disciplined are inapposite because those employees were hourly wage employees whereas plaintiff was a salaried employee. Yet even if I were to disregard this evidence, the plaintiff has still failed to demonstrate that some employee was not disciplined for continually arriving late.

**8.** In the complaint, the plaintiff states, "[o]n the issue of tardiness, I plead guilty." The plaintiff also points to specific dates when she arrived late to work.

four months after she filed her complaint with the Division.

██ Plaintiff contends that defendant's explanations are mere pretext because contrary to promises made to her when she first started her employment, defendant was unwilling to compromise with her on her work schedule.[9] Plaintiff points specifically to a tardiness notice she received that stated, "[i]f you are having a persistent problem (babysitter, illness, marital problems), speak to your Supervisor and/or Personnel. Maybe we can help!" (Pl.'s Aff., Ex. C). Plaintiff's contention is wholly without merit. The notice establishes only that the defendant's policy was to try and help employees out if they were experiencing a persistent non-work related problem. The existence of this policy does not create the inference that defendant's failure to work out a compromise with plaintiff was pretextual. An employer has a legitimate business interest in requiring their employees to arrive by a specific time. *See Zambrana v. Banker's Trust*, 1990 WL 201625 (S.D.N.Y.).

Plaintiff has offered nothing to rebut defendant's specific nondiscriminatory explanation for disciplining her for her tardiness. Consequently, defendant's motion for summary judgment on the claim of retaliation is granted.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in part and denied in part. Defendant's motion is denied with respect to the plaintiff's claim of wage discrimination. Defendant's motion is granted with respect to plaintiff's claim of retaliatory harassment.

IT IS SO ORDERED.

---

9. Plaintiff has also submitted an affidavit from Donald Irwin, a former salesman at Case–Hoyt who worked with the plaintiff. The affidavit states that plaintiff's tardiness had no effect on plaintiff's job performance. However, that plaintiff's job performance was not affected by her tardiness does not undercut the legitimacy of an employer demanding that its employees arrive at work at a specified time.