**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0116n.06**
**Filed: February 11, 2009**

**No. 08-3644**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SHARON WHARTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | C O U R T  F O R  T H E |
| | ) | NORTHERN DISTRICT OF |
| THE GORMAN-RUPP COMPANY, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Sharon Wharton appeals the district court's grant of summary judgment in favor of her employer, defendant The Gorman-Rupp Company, on her claims of age discrimination and retaliation for complaining about age and sex discrimination, under OHIO REV. CODE ANN. §§ 4112.14(A) and 4112.02(I). Wharton contends that Gorman-Rupp's rejection of her application for the position of executive administrative assistant was motivated by age-based discrimination, as evidenced by comments made to her by the company's vice-president of human resources. She also alleges that the company retaliated against her for complaining about alleged age discrimination and sexual harassment when the same vice-president accosted her in the company parking lot and when

her supervisor allegedly increased his scrutiny and criticism of her performance, resulting in a lower-than-expected pay raise.

The district court held that, although the vice-president's alleged statements that Gorman-Rupp was "looking down the road" and "wanted longevity" constituted direct evidence of age discrimination, he was not a "decision maker" in the hiring process and no evidence suggested that the purported decision maker harbored age-based discriminatory animus. The district court also ruled that the parking lot incident did not qualify as a materially adverse employment action and that the company's criticisms and negative evaluation of Wharton stemmed from her longstanding performance deficiencies.

For the reasons that follow, we reverse the district court's grant of summary judgment on Wharton's age discrimination and retaliation claims and remand for further proceedings.

I.

Since 1997, Wharton has been employed by The Gorman-Rupp Company in a variety of administrative support positions at its corporate offices in Mansfield, Ohio. She currently works as an engineering coordinator.

Wharton alleges that, throughout her employment at Gorman-Rupp, Lee Wilkins, Gorman-Rupp's vice-president of human resources, made offensive sexual comments to her. She also contends that Gorman-Rupp denied her application for its newly created position of executive administrative assistant because of her age.

In September 2005, when Wharton was 58 years old, she applied for the executive administrative assistant position. According to the position's advertisement, the successful applicant would be required "to work with company officers" and communicate with its Board of Directors and shareholders. A committee of Gorman-Rupp executive officers, including Wilkins, senior vice-president and chief financial officer Robert Kirkendall, chief information officer William Danuloff, and treasurer Judith Sovine interviewed Wharton for the job.

Approximately two months after her interview, Wharton alleges that Wilkins told her that, although she performed very well at the interview, Gorman-Rupp did not select her for the position because "[w]e were looking down the road, we wanted longevity." She then allegedly asked what he meant by "longevity." Wilkins purportedly responded that "[w]e're both baby boomers," asked how old she was and how much longer she had to work before she retired, and remarked that she would be retiring "before too long" and that the company "went with a younger person."

Wilkins allegedly made similar age-related comments to 49-year-old Susie Beckwith, another Gorman-Rupp employee who was interviewed but not selected for the same position. According to Beckwith, Wilkins told her that she was also rejected because of "longevity and looking down the road." Beckwith testified in her deposition that the remark "stung" and that she responded, "You're telling me I'm too old to replace somebody that was older than my mother?"[1] Gorman-Rupp selected 31-year-old Sherri Green, a Gorman-Rupp employee, for the position.

---

[1]Gorman-Rupp created the executive administrative assistant position after 70-year-old Iris Wertz retired.

On June 5, 2007, Wharton's attorney wrote a letter to Gorman-Rupp detailing her client's allegations of age discrimination and sexual harassment. Approximately three weeks later, on June 28, 2007, Wharton's supervisor, Craig Redmond, gave her what she characterizes as her first "performance deficiency notice" that she had ever received during her ten years of employment at the company. The notice advised Wharton that she would not receive a full salary increase because of various attendance and performance concerns. According to Wharton, after her attorney complained, Redmond treated her "differently" by constantly nit-picking at her work and criticizing her for the slightest errors.

Wharton also alleges that on July 17, 2007, Wilkins accosted her in the company parking lot. According to Wharton, Wilkins approached her car, began yelling at her loudly, and called her "a piece of shit." "His face was very angry," and Wharton "feared that he might strike" her.

Gorman-Rupp temporary employee Scott Heslep witnessed the incident. According to Heslep, he heard Wilkins "very loudly say 'of shit,'" characterized the tone in Wilkins's voice as "one of extreme anger," and described the look Wilkins gave to Wharton as "one of hate" and "very threatening." Heslep also stated that "Mr. Wilkins' demeanor and voice frightened me, as I was not sure what he would do next." After Heslep reported to work, he "was still bothered by what [he] witnessed in the parking lot." He went to Wharton's office "to see if she was alright," and she appeared to be "visibly upset."

On August 23, 2007, Wharton filed suit against Gorman-Rupp in the United States District Court for the Northern District of Ohio, asserting several state law claims against the company.[2] The claims relevant to this appeal are Wharton's claims for age discrimination under OHIO REV. CODE ANN. § 4112.14(A) and retaliation for complaining about age and sex discrimination under OHIO REV. CODE ANN. § 4112.02(I).[3]

On April 9, 2008, the district court granted summary judgment in Gorman-Rupp's favor on Wharton's claims of age discrimination and retaliation. Regarding her age discrimination claim, the court ruled that, although Wilkins's comments constituted direct evidence of age discrimination, there was no causal connection between the remarks and Gorman-Rupp's decision not to hire Wharton for the executive administrative assistant position. Specifically, the court found that, although Wilkins was a member of the hiring committee, CFO Kirkendall was the "final" and "sole" decision maker and Wilkins's opinion did not "ultimately control, or even significantly influence," Kirkendall's decision.

In so ruling, the court relied on four affidavits submitted by Kirkendall, Danuloff, Sovine, and Wilkins. According to those affidavits, which were virtually identical, Wilkins was a member

---

[2]The lawsuit also named as defendants Gorman-Rupp employees Kirkendall, Danuloff, Sovine, Wilkins, and Pfeifer. The individual defendants were later dismissed pursuant to the parties' stipulation.

[3]The lawsuit also asserted claims for discrimination, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.; failure to pay overtime pay, in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*.; and invasion of privacy under Ohio common law. Those claims are not part of Wharton's appeal.

of a committee convened by Kirkendall and tasked to define the job, advertise it, and screen resumés from external applicants. Kirkendall, not the other committee members, was allegedly charged with making the hiring decision. Kirkendall purportedly decided "early in the process" that the committee would interview all Gorman-Rupp employees who applied for the position, regardless of their qualifications.

After interviewing ten applicants, the four committee members allegedly "unanimously agreed" about the top two finalists for the position, having ranked the applicants separately before disclosing their choices to the rest of the committee. According to Kirkendall's affidavit,

> [t]here was no dissent within the committee and no discussion about any of the other applicants, including Ms. Wharton. No one tried to persuade me that any other applicant, including Ms. Wharton, should be included on the finalist list, and no one tried to dissuade me from picking [the two finalists]. Ms. Wharton's name was never mentioned by anyone in the committee or by me as a viable contender, or at all, following her interview. No one on the committee ever tried to influence any opinion I had formed of Ms. Wharton, negatively or positively.

> No committee member raised the issues of age or retirement regarding any of the interviewees, either in public or with me.

The affidavits consistently stated that:

> Ms. Wharton's interview on November 11, 2005, was lackluster and unimpressive from the beginning. She gave a limp, unenthusiastic handshake. She came across as not very interested in the position and lacking in conviction about her qualifications. She seemed as though she took the interview process for granted and considered it to be merely perfunctory. Her grammar was poor.

> * * *

> I do not believe, based on the credentials she presented, that Ms. Wharton was sufficiently qualified for the Executive Administrative Assistant position, and she certainly was not as qualified as the majority of the other candidates. I ultimately

viewed her experience as being insufficiently "executive" and "administrative" in nature, and her disengaged, grammatically incorrect interview performance just confirmed my opinion.

Ms. Wharton was less qualified on paper, she interviewed poorly, and her skills and experience ranked her at or near the bottom of my list of all the applicants we interviewed. [4]

Regarding Wharton's retaliation claims, the court ruled that Wilkins's "occasional insults" did not satisfy the prima facie case for retaliation because they did not qualify as materially adverse employment actions. It also held that Redmond's alleged heightened scrutiny and unfavorable evaluation of Wharton resulting in denial of a full pay raise were legitimate and non-discriminatory because the company documented her "longstanding work performance deficiencies" two years before she complained about alleged discrimination.

Wharton timely appealed.

II.

A district court's grant of summary judgment is reviewed de novo. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

---

[4]The court also determined that a spreadsheet containing a "years of work" column that was used in the interview process did not demonstrate age-related bias, nor did it influence the hiring decision.

The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must then produce specific facts demonstrating that a genuine issue of material fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby, Inc.*, 477 U.S. at 247-48 (1986) (emphasis in original). Thus, only disputed material facts, those "that might affect the outcome of the suit under the governing law," will preclude summary judgment. *Id*. at 248.

A.

OHIO REV. CODE ANN. § 4112.14(A) makes it unlawful for an employer to discriminate against any job applicant "aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." Age discrimination claims brought under Ohio law are analyzed under the same standards as federal claims brought under the Age Discrimination in Employment Act ("ADEA"). *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) (citation omitted); *Barker*

*v. Scovill, Inc.*, 451 N.E.2d 807, 809 (Ohio 1983).  Under the ADEA, a plaintiff may demonstrate age discrimination by presenting either direct or indirect (circumstantial) evidence. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

Direct evidence is "evidence that proves the existence of a fact without requiring any inferences."  *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)).  Comments "from the lips" of the employer "proclaiming his or her . . . animus" constitute direct evidence of discrimination. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (quoting *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998)).  *See also Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 116 (6th Cir. 2007) (unpublished) (stating that "direct evidence is found . . . where a statement by an employer directly shows there is a discriminatory motive.") (quoting *Olive v. Columbia/HCA Healthcare Corp.*, Nos. 75249 & 76349, 2000 Ohio App. LEXIS 914 (Ohio Ct. App. Mar. 9, 2000)). The statement must not be "isolated, ambiguous, or abstract" and must be a remark "by the employer." *Coburn,* 238 F. App'x at 117-18 (quoting *Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP-941, 2005 Ohio App. LEXIS 5700 (Ohio Ct. App. Dec. 1, 2005)).  A discriminatory comment is attributable to the employer when it is made by a "decision maker." *Coburn*, 238 F. App'x at 118 (noting the "vital difference" between discriminatory statements by corporate decision makers and "stray remarks" by personnel who are unrelated to the decision making process) (quoting *Molnar v. Klammer*, No. 2004-L-072-CA, 2005 Ohio App. LEXIS 6227 (Ohio Ct. App. Dec. 23, 2005)). When a plaintiff offers direct evidence of discrimination, "the case should proceed as an ordinary

civil matter[,]" and "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Blair*, 505 F.3d at 523-24 (citations omitted). *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 n.10 (1989).

Wharton contends that Wilkins's explanation about why the hiring committee did not select her for the executive administrative assistant position constituted direct evidence of age discrimination. We agree.

Considering the evidence in the light most favorable to Wharton, Wilkins's alleged remarks to Wharton that the company was "looking down the road," "wanted longevity," characterization of her as a "baby boomer" in response to her request for an explanation about what he meant by "longevity," questions about Wharton's age and how much longer she had before she retired, and comments that she would be retiring "before too long" and that the company "went with a younger person" were not isolated, ambiguous, or abstract; rather, they directly concerned the specific hiring decision, and they can be interpreted as discriminatory. Further, Wharton need not rely on her own allegations to create a genuine issue of material fact about whether Wilkins made the comments because applicant Susie Beckwith also submitted an affidavit stating that Wilkins made similar comments to her when explaining why *she* was not selected for the same job. Both Wharton and Beckwith interpreted Wilkins's alleged remarks as age-based discrimination, Beckwith responding to Wilkins's alleged explanation by asking him, "You're telling me I'm too old to replace somebody that was older than my mother?"

Although the parties frame the dispositive issue as whether Wilkins was a "decision maker," and the district court found that he was not, Wharton need not rely on that inquiry to impute Wilkins's comments to Gorman-Rupp. It is undisputed that Wilkins witnessed all or most aspects of the hiring process. Again considering the evidence in the light most favorable to Wharton, Wilkins, as a witness with personal knowledge, directly implicated all members of the hiring committee, including Kirkendall himself, the undisputed "decision maker," in alleged discriminatory conduct when he explained the hiring committee's decision to Wharton using the first-person plural "we." ("*We* were looking down the road, *we* wanted longevity.") Accordingly, we hold that the remarks are properly attributable to Gorman-Rupp at the summary judgment stage of analysis.

Because Wharton presented direct evidence of age discrimination via Wilkins's comments, she need not establish the prima facie case required by the *McDonnell-Douglas* burden-shifting test and applicable when a plaintiff's discrimination claim relies solely on circumstantial evidence.[5] *See Blair*, 505 F.3d at 523-24 (citing *McDonnell-Douglas v. Green*, 411 U.S. 792, 802-05 (1973)). However, we express no opinion about the merits of Gorman-Rupp's asserted defense – that it would have made the same decision not to hire Wharton for the position absent its alleged discriminatory motive.

For the reasons stated, we reverse the district court's grant of summary judgment in favor of Gorman-Rupp on Wharton's age discrimination claim.

---

[5]Regarding the spreadsheet containing a "years of work" column, we agree with the district court that it was not direct evidence of age discrimination. In fact, "years of work," which may be synonymous with "experience," is a legitimate, non-discriminatory hiring consideration.

B.

Wharton also contends that the district court erred in granting summary judgment in favor of Gorman-Rupp on her retaliation claims. She alleges that after her attorney sent Gorman-Rupp a letter complaining about alleged age discrimination and sexual harassment, it retaliated against her in two ways: (1) Wilkins accosted her in the company parking lot, and (2) Redmond increased his scrutiny and criticism of her work and issued a "performance deficiency notice" that resulted in denial of a full salary increase.

OHIO REV. CODE ANN. § 4112.02(I) makes it unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice . . . ." Wharton agrees that her retaliation claims are based on circumstantial evidence. Retaliation claims arising under Ohio law that are based on circumstantial evidence are analyzed under the same *McDonnell-Douglas/Burdine* evidentiary framework used to assess claims of discrimination. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (citations omitted).

Under this test, a plaintiff must first establish a prima facie case of retaliation by demonstrating that (1) she engaged in protected activity; (2) the employer knew that she exercised her protected civil rights; (3) the employer thereafter discriminated against her in a materially adverse way; and (4) there was a causal connection between the protected activity and the adverse action. *Id.* (citation omitted). If the plaintiff satisfies all prima facie elements, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Id.* (citations

omitted).  If the employer meets its burden of production, "the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." *Id*. (citation omitted).

1.

Regarding the parking lot incident, the court held that Wilkins's alleged conduct was not a materially adverse employment action as required by the third element of the prima facie case. Specifically, the court found that such conduct,  "even if insulting, fail[ed] to rise to the level of severity required to constitute behavior that would deter an employee from reporting discrimination." We disagree.

The Supreme Court has stated that an action is "materially adverse" if it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted).  Because the anti-discrimination laws were not intended to mandate "a general civility code for the American workplace," *id*. (citation omitted), "petty slights, minor annoyances, and simple lack of good manners will not create such a deterrence." *Id*. (citation omitted).  "Context matters," and the deterrent impact of the alleged conduct must be judged by an "objective standard," taking into account the reactions of a "reasonable employee." *Id*. at 68-69.

Here, Wilkins's alleged conduct in the parking lot qualifies as a materially adverse employment action.  Although the district court characterized the encounter as an "occasional insult" or "stray comment," a disinterested witness to the incident, temporary employee Scott Heslep,

perceived it quite differently. Heslep confirmed that he heard Wilkins yell "of shit" at Wharton, described the tone in Wilkins's voice as "one of extreme anger," characterized the look that Wilkins gave to Wharton as "one of hate" and "very threatening," and stated that Wilkins's "demeanor and voice frightened me as I was not sure what he would do next." Heslep's description of the events he witnessed corroborates Wharton's testimony that she feared Wilkins might strike her. Following the incident, Heslep was so concerned about Wharton that he visited her office. According to Heslep, Wharton appeared to be "visibly upset."

Threatening behavior by a vice-president of human resources toward a subordinate employee in the company parking lot, where that employee reasonably feels that violence is a real possibility, is likely to dissuade any reasonable worker from making or supporting a charge of discrimination and transcends the realm of "petty slights, minor annoyances, and simple lack of good manners." Accordingly, we hold that the district court erred in finding that, as a matter of law, Wilkins's conduct in the parking lot was not a materially adverse employment action.

2.

Whether Redmond's alleged criticisms and unfavorable evaluation of Wharton that resulted in denial of a full pay raise were retaliatory are closer questions. The district court found that Gorman-Rupp articulated a legitimate, non-retaliatory reason for unfavorably evaluating Wharton and denying her the raise and that she failed to demonstrate that its articulated reason was a pretext for retaliation. According to the court, Wharton had "longstanding work performance deficiencies,"

most of which were documented by multiple supervisors in her 2005 and 2006 performance reviews, "long before [she] reported any sex or age discrimination . . . ."

Employers are, of course, permitted to supervise and negatively evaluate their employees. This is particularly true when the employer's concerns about the employee's performance predated her complaints about discrimination. *See*, *e.g.*, *Zenni v. Hard Rock Cafe Int'l*, *Inc.*, 903 F. Supp. 644, 655-56 (S.D.N.Y. 1995) (holding that the plaintiff did not establish the causation element of the prima facie case for retaliation where he committed infractions and the employer negatively evaluated him before he complained about alleged discrimination); *Lawson v. Getty Terminals Corp.*, 866 F. Supp. 793, 804 (S.D.N.Y. 1994) (holding that the plaintiff failed to establish the causation element of the prima facie case for retaliation where his employer informed him that it was dissatisfied with his performance and verbally counseled him about his failure to perform required job duties before he complained about alleged discrimination). The district court noted Wharton's admission that Gorman-Rupp criticized her performance years before she complained about discrimination.

Thus, while Gorman-Rupp's negative appraisals of Wharton's job performance may have been legitimate and non-retaliatory because they were longstanding, the major point of contention appears to be that Wharton always received her full pay raise in prior years *despite* such negative evaluations. Recognizing that fact, the district court inexplicably contradicted itself when it held that the same evidence precluding summary judgment on Wharton's FMLA interference claim *justified* summary judgment on her retaliation claim:

[T]he Defendant says that Plaintiff Wharton's work performance problems existed long before she took FMLA leave and that these problems constituted independent reasons to deny her the full salary increase. The record shows that the Plaintiff was indeed criticized for many of the same work performance problems in 2005 and 2006 as she was in 2007. *This argument, however, actually supports the Plaintiff's claim* that the Defendant wrongfully used her FMLA-covered absences to deny her a full raise in June 2007. The evidence suggests that the only substantive difference between the Plaintiff's 2005 and 2007 performance reviews is that the Plaintiff was criticized for her FMLA absences in the latter evaluation. *Despite her alleged similar work performance problems*, the Plaintiff received a 4.49% salary increase on July 1, 2005 and a 4.94% salary increase on July 1, 2006. On July 1, 2007, however, she only received a 2.04% salary increase. This evidence raises a genuine issue of material fact because a jury could reasonably find that the Defendant thus used the Plaintiff's FMLA leave against her, at least in part, in making its salary decisions in 2007.

(Emphasis added.)

Based on the apparent incongruity in the district court's analyses of Wharton's FMLA and retaliation claims and our duty to construe the facts in the light most favorable to Wharton, we conclude that the legitimacy of Gorman-Rupp's articulated non-retaliatory reason for denying Wharton the full pay raise three weeks after she complained – her deficient performance – is sufficiently called into question by the company's history of granting her full pay raises in previous years, despite its criticisms of her work performance and the close temporal proximity between her attorney's letter and the adverse action. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (holding that a plaintiff may demonstrate that an employer's proffered explanation for its conduct is pretextual where the plaintiff shows that the given reason "did not actually motivate the employer's conduct" or "was insufficient to warrant the challenged conduct.").

For these reasons, the district court erred in finding that Wharton failed to create a triable issue of fact about whether Gorman-Rupp's articulated legitimate, non-retaliatory reason for denying her a full pay raise three weeks after she complained was a pretext for retaliation.

III.

For the reasons stated, we reverse the district court's grant of summary judgment on Wharton's age discrimination and retaliation claims and remand the case to the district court for further proceedings.